[Cite as *State v. Milton*, 2019-Ohio-3900.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-487 |
| | | (C.P.C. No. 16CR-172) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Victor N. Milton, | : | |
| Defendant-Appellant. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-488 |
| | | (C.P.C. No. 16CR-1901) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Victor N. Milton, | : | |
| Defendant-Appellant. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-490 |
| | | (C.P.C. No. 16CR-886) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Victor N. Milton, | : | |
| Defendant-Appellant. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-491 |
| | | (C.P.C. No. 16CR-693) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Victor N. Milton, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 26, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee.

**On brief:** *Barnhart Law Office LLC*, and *Robert B. Barnhart*, for appellant *Anders* Brief.

**On brief:** *Anzelmo Law*, and *James A. Anzelmo*, for appellant, Supplemental Brief.

APPEALS from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1}  Defendant-appellant, Victor N. Milton, appeals from judgments of the Franklin County Court of Common Pleas in case Nos. 16CR-172, 16CR-1901, 16CR-886, and 16CR-693 entered on June 26, 2017.  Before this court on behalf of appellant is a counseled brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), as well as a supplemental brief filed by separate counsel appointed by this court subsequent to the filing of the *Anders* brief and withdrawal of appellant's first counsel.  Also before this court are briefs filed on behalf of plaintiff-appellee, State of Ohio.  For the reasons that follow, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2}  These cases involve a series of home invasions in different neighborhoods throughout Franklin County, Ohio including in the neighborhood of The Ohio State University.  Fingerprint analysis, GPS tracking, photos of stolen property on appellant's phone, and certain admissions by appellant linked appellant to the crimes.

{¶ 3}  On January 12, 2016, a Franklin County Grand Jury indicted appellant in case No. 16CR-172 (appeal No. 17AP-487) on 1 count of burglary, a felony of the second degree, in violation of R.C. 2911.12; and 1 count of theft, a felony of the fifth degree, in violation of R.C. 2913.02, each offense occurring on or about September 20-21, 2015.

{¶ 4}  On April 7, 2016, a Franklin County Grand Jury indicted appellant in case No. 16CR-1901 (appeal No. 17AP-488) on 1 count of aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11, accompanied by a 3-year firearm specification, in violation of R.C. 2941.145(A); 3 counts of aggravated robbery, felonies of the first degree, in violation of R.C. 2911.01, each count accompanied by a 3-year firearm specification, in

violation of R.C. 2941.145(A); 3 counts of robbery, felonies of the second degree, in violation of R.C. 2911.02, each count accompanied by a 3-year firearm specification, in violation of R.C. 2941.145(A); 3 counts of robbery, felonies of the third degree, in violation of R.C. 2911.02, each count accompanied by a 3-year firearm specification, in violation of R.C. 2941.145(A); 1 count of tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12, accompanied by a 1-year firearm specification, in violation of R.C. 2941.145(A); 3 counts of kidnapping, felonies of the first degree, in violation of R.C. 2905.01, each count accompanied by a 3-year firearm specification, in violation of R.C. 2941.145(A); and 1 count of having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13, each offense occurring on or about March 29, 2016.

{¶ 5} On February 18, 2016, a Franklin County Grand Jury indicted appellant in case No. 16CR-886 (appeal No. 17AP-490) on 1 count of burglary, a felony of the second degree, in violation of R.C. 2911.12, occurring on or about November 2, 2015.[1]

{¶ 6} On February 9, 2016, a Franklin County Grand Jury indicted appellant in case No. 16CR-693 (appeal No. 17AP-491) on 11 counts of burglary, felonies of the second degree, in violation of R.C. 2911.12, occurring on or about numerous dates between August 3 and December 21, 2015, involving various structures at different locations.

{¶ 7} Numerous bond hearings were held on these cases.

{¶ 8} On April 13, and 21, 2016, in all four cases, appellant filed a motion for competency examination pursuant to R.C. 2945.37. Appellant also filed in all four cases a motion for evaluation of his mental condition at the time of the offense (sanity). The court granted both motions in all four cases on April 14 and 22, 2016.

{¶ 9} On May 24, 2016, the trial court held a hearing to consider the question of appellant's competency to stand trial. At the hearing, the court noted it had received and reviewed two separate evaluation reports, one for competency and one for sanity (not guilty

---

[1] At the plea hearing, the prosecutor informed the trial court that in case No. 16CR-886 the offense occurred in Lewis Center, Ohio, which is located in Delaware County. The prosecutor explained to the court that as this offense was part of a course of criminal conduct, the parties waived the defect in the indictment not alleging specifically course of conduct. Appellant's counsel stipulated that the Franklin County trial court had venue over the case, pursuant to R.C. 2901.12(H), both as it is part of a course of conduct as well as part of an modus operandi as well. Appellant's counsel indicated he had discussed the matter and the different options with appellant and that given the circumstances and appellant's desire to accept responsibility and move forward, appellant stipulated to the same. Appellant himself agreed to the stipulation on the record. The trial court, based on the stipulations, found that venue had been waived, pursuant to R.C. 2901.12(H), and that the offense constituted part of a course of conduct with the other three pending cases.

by reason of insanity "NGRI").  The prosecutor and appellant's counsel both indicated they reviewed the reports and both stipulated to the findings in the reports, that: (1) appellant was capable of understanding the legal proceedings against him and assisting counsel, and (2) at the time of the offense, appellant did know the wrongfulness of the acts charged.  The trial judge noted he had before him an entry "regarding the competency issue," executed the same, and in so doing found appellant understood the nature and objective of the proceedings against him and could at that time assist in his own defense; therefore, the court found appellant competent to stand trial.  (May 24, 2016 Tr. at 3.)  The court did not specifically, at the hearing or in a subsequent entry, make a finding regarding NGRI.  However, as noted above, appellant's counsel stipulated to the findings in the evaluation report regarding NGRI that at the time of the offense, appellant did know the wrongfulness of the acts charged.  Furthermore, no evidence or expert report was presented to the contrary.

{¶ 10} On October 3, 2016, appellant's attorney withdrew as counsel from all four cases.  Upon the filing of an affidavit of indigency, the court appointed new counsel.  Counsel requested discovery and discovery was exchanged.  Supplemental discovery was requested and exchanged.

{¶ 11} On April 27, 2017, after being advised of his rights pursuant to Crim.R. 11, appellant, represented by counsel, entered pleas of guilty to: (1) guilty to Count 1 in case No. 16CR-172, burglary, a felony of the second degree in violation of R.C. 2911.12; nolle prosequi was entered for Count 2; (2) guilty to Count 1 in case No. 16CR-1901, aggravated burglary without specification, a felony of the first degree, in violation of R.C. 2911.11; guilty to Count 3 in case No. 16CR-1901, aggravated burglary[2] with firearm specification, a felony of the first degree, in violation of R.C. 2911.11; guilty to Count 15 in case No. 16CR-1901, having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13; and nolle prosequi was entered for the remaining counts; (3) guilty to Count 1 in case No. 16CR-886, burglary, a felony of the second degree, in violation of R.C. 2911.12; and (4) guilty to Counts 2, 4, 5, 6, 9, and 10 in case No. 16CR-693, burglary, all felonies of the second degree, in violation of R.C. 2911.12(A)(2); guilty to the stipulated lesser-included offenses of Counts 3, 8, and 11 in case No. 16CR-693, burglary, all felonies of the third

---

[2] *See* infra discussion of third assignment of error regarding the same.

degree, in violation of R.C. 2911.12(A)(3); and guilty to the stipulated-lesser included offenses of Counts 1 and 7 in case No. 16CR-693, receiving stolen property, all felonies of the fifth degree, in violation of R.C. 2913.51.

{¶ 12} The court ordered and received a presentence investigation. Letters, certificates of completion of various personal development courses and of excellence in work, and a sentencing memorandum were submitted to the court on appellant's behalf.

{¶ 13} On June 22, 2017, the court held a sentencing hearing. The entry indicates and the transcript supports that appellant, his counsel, and the prosecuting attorney were present. No joint recommendation was made regarding sentencing. The court afforded counsel and appellant an opportunity to speak in the form of mitigation and to present information regarding the existence or non-existence of the factors the court considered and weighed. The court considered the purposes and principles of sentencing set forth in R.C. 2929.11, the factors set forth in R.C. 2929.12, as well as the applicable provisions of R.C. 2929.13 and 2929.14.

{¶ 14} In case Nos. 16CR-172 and 16CR-1901, the trial court imposed no fine and waived court costs. In case No. 16CR-172, the court required appellant to pay restitution in the amount of $2,499.00 to a victim named in an accompanying confidential entry. In case No. 16CR-886, the court required appellant to pay restitution in the amount of $2,410.00 to a victim named in an accompanying confidential entry. In case No. 16CR-693, the court ordered full restitution to be paid to the victims and in its judgment entry stated "[p]lease see the accompanying confidential entries for victims restitution information." (Case No. 16CR-693 June 26, 2017 Jgmt. Entry at 2.) A sealed restitution notice was filed in case No. 16CR-693 on June 23, 2017 ordering appellant to pay a total of $22,386.67 as directed to ten different victims. The court deferred all restitution until after appellant is released from prison.

{¶ 15} In case No. 16CR-172, the court imposed a sentence of 3 years to be served at the Ohio Department of Rehabilitation and Correction. In case No. 16CR-1901, the court imposed a sentence of 6 years as to Count 1; 6 years as to Count 3 to be served consecutive to the 3-year firearm specification; and 12 months as to Count 15, with all counts being served consecutive to each other. In case No. 16CR-886, the court imposed a sentence of 4 years. In case No. 16CR-693, the court imposed a sentence of 3 years as to Counts 2, 4, 5, 6, 9, and 10; 12 months as to Counts 3, 8, and 11; and 6 months as to Counts 1 and 7 with

all counts being served concurrent with each other for a total of 3 years in this case.  In all cases, the court noted the prison time imposed shall be served consecutive to the sentence imposed in the remaining cases.  The total aggregate prison term imposed by the court in all four cases was 26 years.

{¶ 16}  The court gave appellant 453 days of jail-time credit in case No. 16CR-172, 3 days credit in 16CR-1901, 0 days credit in 16CR-886, and 42 days credit in 16CR-693.  In case Nos. 16CR-172 and 16CR-693, the court noted it disapproved of appellant's placement in an intensive prison program or transitional control or risk reduction sentence.

{¶ 17}  Appellant filed pro se notices of appeal on July 7, 2017.  Subsequently, Attorney Robert Barnhart was appointed to the case.  Attorney Barnhart obtained the transcripts of the case and reviewed them for reversible error.  He filed a brief pursuant to *Anders*.  Attorney Barnhart stated he was "unable to find any arguable and non-frivolous issues to raise on appeal" and submitted that "the record in this case does not reveal any meritorious or non-frivolous grounds for appeal."  (Appellant's *Anders* Brief at 6, 12.) Notwithstanding Attorney Barnhart's conclusion upon reviewing the record that he could not find a non-frivolous argument that the trial court failed to comply with Crim.R. 11 in explaining to appellant the rights he would waive by entering a plea, pursuant to *Anders*, Attorney Barnhart informed the court that the issue before it is whether appellant entered his plea in a knowing, intelligent, and voluntary manner given the trial court failed to explain the effect of a guilty plea.  Attorney Barnhart requested leave to withdraw and provided a certificate of service showing that appellant had been served an accurate copy of this brief by first class United States mail.

{¶ 18}  Pursuant to our procedure upon receiving an *Anders* brief, as outlined in *State v. Matthews*, 10th Dist. No. 11AP-532, 2012-Ohio-1154, we determined that Attorney Barnhart had furnished appellant with a copy of the *Anders* brief and motion to withdraw. We notified appellant of his appellate counsel's representations, granted counsel's motion to withdraw, and granted appellant leave until December 8, 2017 to file a supplemental brief.  Appellant did not file a supplemental brief.

{¶ 19}  Pursuant to *State v. Cooper*, 10th Dist. No. 09AP-511, 2009-Ohio-6275, we examined the potential assignment of error and the entire record below to determine if the appeal lacked merit.  *Matthews* instructed us that "[a]fter fully examining the proceedings below, if we find only frivolous issues on appeal, we then may proceed to address the case

on its merits without affording appellant the assistance of counsel." *Matthews* at ¶ 10, citing *Penson v. Ohio*, 488 U.S. 75, 80 (1988). However, if we conclude there are non-frivolous issues for appeal, we must afford appellant the assistance of counsel to address those issues. *Anders* at 744; *Penson* at 80.

{¶ 20} This court reviewed the briefs and thoroughly reviewed the record. Upon conducting this thorough review, the court found five potential non-frivolous issues as outlined in our June 26, 2018 Journal Entry. Accordingly, as the court found potential non-frivolous issues, this court appointed the office of the Franklin County Public Defender to represent appellant. Subsequently, the public defender moved to withdraw based on a conflict of interest. The court then appointed Attorney James Anzelmo to represent appellant and file a supplemental brief. Numerous continuances were granted. Attorney Anzelmo filed a supplemental brief on behalf of appellant. In addition to the potential assignment of error raised by Attorney Barnhart, Attorney Anzelmo raised four assignments of error. The state filed a response brief.

## II. Assignments of Error

{¶ 21} Appellant appeals and assigns the following five assignments of error for our review:

> 1. THE TRIAL COURT ERRED WHEN IT ACCEPTED APPELLANT'S GUILTY PLEA WITHOUT ENSURING IT WAS ENTERED KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY.[3]
>
> 2. Victor Milton did not knowingly, intelligently and voluntarily plead guilty, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Section Sixteen, Article One of the Ohio Constitution.[4]
>
> 3. The trial court unlawfully convicted Victor Milton on an offense to which he did not plead guilty, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Section Sixteen, Article One of the Ohio Constitution.[5]

---

[3] This assignment of error was the only potential assignment of error initially raised by Attorney Barnhart when he filed the *Anders* brief.
[4] This was the first assignment of error raised by Attorney Anzelmo.
[5] This was the second assignment of error raised by Attorney Anzelmo.

4. The trial court erroneously disapproved Milton for intensive program prison, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Section Sixteen, Article One of the Ohio Constitution.[6]

5. The trial court erred when it ordered Milton to pay restitution, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Section Sixteen, Article One of the Ohio Constitution.[7]

## III. Analysis

### A.  Fifth Assignment of Error - Restitution

{¶ 22}   We begin with the fifth assignment of error.  In the fifth assignment of error, appellant generally argues, without distinguishing between the four cases, that the trial court erred in failing to hold a hearing because he disputed the restitution amount.  In support, appellant cites to R.C. 2929.18(A)(1).  Appellant further argues the court erred by failing to specify in open court, in front of appellant, the amount of restitution to be paid. In support, appellant cites a Fourth District case, *State v. Leonhart*, 4th Dist. No. 13CA38, 2014-Ohio-5601, ¶ 69-70.

{¶ 23}  The state concedes error with regard to case Nos. 16CR-172 and 16CR-693. The state acknowledges appellant disputed the restitution amount and the trial court did not hold a hearing on restitution.  Accordingly, with regard to case Nos. 16CR-172 (appeal No. 17AP-487) and 16CR-693 (appeal No. 17AP-491), we sustain appellant's fifth assignment of error and remand these cases to the trial court in order to hold a hearing on restitution pursuant to R.C. 2929.18(A)(1).

{¶ 24}  The state, however, argues with regard to case No. 16CR-886, that the victim supplied information on restitution and appellant agreed to that amount.  The transcript from the June 22, 2017 sentencing hearing reveals the prosecutor informing the court that victim "[O] is the only one that I saw submitted [restitution] to the State.  [Appellant's attorney] signed off on that restitution order." (June 22, 2017 Tr. at 11.)  Later in the hearing, appellant's attorney informed the court "[w]ith respect to restitution, Judge, again, we have no problem with the figure that was put together by the man who actually replied

---

[6] This was the third assignment of error raised by Attorney Anzelmo.
[7] This was the fourth assignment of error raised by Attorney Anzelmo.

to the prosecutor's request." (June 22, 2017 Tr. at 29.) The judgment entry for this case specifically orders appellant pay $2,410.00 to the victim and notes the victim's restitution information is contained in the accompanying confidential entry.

{¶ 25} We agree with the state that no restitution hearing was necessary with regard to case No. 16CR-886 as the record reveals appellant stipulated to the amount. Furthermore, we reject appellant's argument that *Leonhart* required more than what the trial court did with regard to restitution in case No. 16CR-886. *Leonhart* is a Fourth District case which can be distinguished from the case before us as the appellant therein was not present when the trial court imposed restitution in an amended sentencing entry. Accordingly, with regard to case No. 16CR-886 (appeal No. 17AP-490), we overrule appellant's fifth assignment of error.

{¶ 26} Finally, the state argues with regard to case No. 16CR-1901, that no restitution was ordered in that case and, therefore, appellant's arguments are meritless. We agree with the state as the judgment entry for case No. 16CR-1901 reveals no restitution was ordered. Accordingly, with regard to case No. 16CR-1901 (appeal No. 17AP-488), we overrule appellant's fifth assignment of error.

{¶ 27} Thus, we sustain appellant's fifth assignment of error as to case Nos. 17AP-487 and 17AP-491 and overrule appellant's fifth assignment of error as to 17AP-490 and 17AP-488.

## B. Fourth Assignment of Error - Disapproval of Intensive Program Prison

{¶ 28} In the fourth assignment of error, appellant argues that in the sentencing entry for case Nos. 16CR-693 and 16CR-172, the court disapproved of appellant's placement in an intensive program prison, however, it did not provide reasons for the disapproval as required by R.C. 2929.19(D). Therefore, appellant argues the trial court erred and this court should sustain the fourth assignment of error with regard to case Nos. 16CR-693 and 16CR-172.

{¶ 29} The state argues in response that the offenses of which appellant was convicted in case Nos. 16CR-693 and 16CR-172 render him ineligible for placement in an intensive program prison, and therefore the trial court's error, if any, is harmless. The state further argues that even if appellant were eligible, the entire record shows the court gave significant reasons that support its disapproval in intensive program prison.

{¶ 30} R.C. 2929.19(D) states:

> The sentencing court, pursuant to division (I)(1) of section 2929.14 of the Revised Code, may recommend placement of the offender in a program of shock incarceration under section 5120.031 of the Revised Code or an intensive program prison under section 5120.032 of the Revised Code, disapprove placement of the offender in a program or prison of that nature, or make no recommendation. *If the court recommends or disapproves placement, it shall make a finding that gives its reasons for its recommendation or disapproval.*

(Emphasis added.)

{¶ 31} R.C. 5120.032(B) states:

> (2) A prisoner who is in any of the following categories is *not* eligible to participate in an intensive program prison established pursuant to division (A) of this section:
>
> (a) The prisoner is serving a prison term for aggravated murder, murder, *or a felony of the first or second degree* or a comparable offense under the law in effect prior to July 1, 1996, or the prisoner previously has been imprisoned for aggravated murder, murder, or a felony of the first or second degree or a comparable offense under the law in effect prior to July 1, 1996.

(Emphasis added.)

{¶ 32} In *State v. Walz*, 2d Dist. No. 23783, 2012-Ohio-4627, the Second District Court of Appeals determined that where a defendant was a first-degree felon and, therefore, ineligible for intensive program prison, any error for failure to make certain findings was necessarily harmless. We agree with the Second District.

{¶ 33} In case No. 16CR-172, appellant pled guilty to and was convicted of burglary, in violation of R.C. 2911.12, a felony of the second degree. In case No. 16CR-693, appellant pled guilty and was convicted of, among other offenses, six counts of burglary, in violation of R.C. 2911.12(A)(2), all felonies of the second degree. Appellant makes no argument that these felonies were not in effect prior to July 1, 1996.

{¶ 34} Therefore, on the facts of this case, pursuant to R.C. 5120.032(B)(2)(a), appellant was ineligible for an intensive program prison, and error, if any, was necessarily harmless.

{¶ 35} Accordingly, we overrule the fourth assignment of error.

**C. Third Assignment of Error - Entry in Case No. 16CR-1901 Indicating Plea to Count Three of Aggravated Burglary**

{¶ 36} In the third assignment of error, appellant argues the trial court erred in case No. 16CR-1901 by indicating in the judgment entry that appellant pled guilty to aggravated burglary with a specification when, in fact, he pled guilty to aggravated robbery with a specification.

{¶ 37} Indeed, the trial court did indicate in its entry for case No. 16CR-1901 that appellant entered a plea of guilty to several offenses, including "to Count Three of the indictment, to-wit: AGGRAVATED BURGLARY WITH FIREARM SPECIFICATION, in violation of R.C. 2911.11, a Felony of the First Degree."  (June 26, 2017 Jgmt. Entry.) However, the record reveals appellant entered a plea of guilty to aggravated robbery with a firearm specification, in violation of R.C. 2911.01, a felony of the first degree.  At the plea hearing, the court inquired of appellant:

> THE COURT: In 16CR-1901, * * * [h]ow do you plead to Count Three, aggravated robbery with a firearm specification, a felony of the first degree?
>
> THE DEFENDANT: Guilty.

(Apr. 27, 2017 Tr. at 25.)

At the sentencing hearing, the court stated:

> THE COURT: In the 1901 case, you will serve * * * 6 years on the aggravated robbery.

(June 22, 2017 Tr. at 40-41.)

{¶ 38} The state concedes the trial court erred when it journalized a sentence for Count 3 as aggravated burglary with specification in case No. 16CR-1901.  However, the state argues this was a clerical error that can be corrected by remanding the case with instructions for the court to issue a nunc pro tunc entry correcting the error.

{¶ 39} Crim.R. 36 permits clerical mistakes in judgments to be corrected by the court at any time.  The appropriate vehicle by which a trial court may correct a judgment is a nunc pro tunc entry, and such an entry must reflect what a trial court actually did, not what the court might or should have done.  *State ex rel. DeWine v. Burge*, 128 Ohio St.3d 236, 2011-Ohio-235, ¶ 17.

{¶ 40} As noted above, the record reflects what the trial court actually did was to accept appellant's plea of guilty to Count 3, aggravated robbery with a firearm specification, in violation of R.C. 2911.01, a felony of the first degree. The record further reflects the trial court actually sentenced appellant to the same. Therefore, pursuant to Crim.R. 36, we agree the trial court's error of indicating appellant pled guilty to aggravated burglary with a firearm specification as to Count 3 may be corrected upon remand with a nunc pro tunc entry.

{¶ 41} Accordingly, we sustain appellant's third assignment of error, however, upon remand we instruct the trial court correct this error with a nunc pro tunc entry to reflect what the trial court actually did as noted above.

## D. First and Second Assignments of Error - Knowing, Intelligent, Voluntary Plea

{¶ 42} We will discuss the first and second assignments of error together. Appellant asserted the first assignment of error in his *Anders* brief, and the second assignment of error in his supplemental brief.

{¶ 43} In the first and second assignments of error, appellant alleges he did not knowingly, intelligently, and voluntarily plead guilty because: (1) the trial court did not explain to appellant the effect of a guilty plea, (2) the trial court did not explain the maximum prison sentence appellant faced for each of the offenses to which he was pleading guilty, and (3) the trial court did not provide complete information to appellant regarding postrelease control during the plea colloquy.

{¶ 44} " 'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.' " *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11(C) provides specific requirements for a trial judge to follow in order to help ensure that guilty pleas are knowingly, intelligently, and voluntarily made. *See State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 41 ("To ensure that pleas of guilty and no contest are voluntarily, knowingly, and intelligently made, trial courts must accurately advise defendants of the law in Crim.R. 11 plea colloquies."). Crim.R. 11(C)(2) imposes the following duties on a trial judge in a felony case:

In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 45} A trial court must strictly comply with Crim.R. 11(C)(2)(c) and advise the defendant of the federal constitutional rights protected by the rule. *Veney* at ¶ 18-21; *State v. Haddad*, 10th Dist. No. 16AP-459, 2017-Ohio-1290, ¶ 7. With respect to non-constitutional protections under Crim.R. 11(C)(2)(a) and (b), substantial compliance is sufficient. *Veney* at ¶ 14-17; *Haddad* at ¶ 8.

{¶ 46} Appellant's three arguments in support of his first and second assignments of error are subject to substantial compliance as they involve non-constitutional protections under Crim.R. 11(C)(2)(a) and (b).

{¶ 47} " 'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.' " *Veney* at ¶ 15, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). Under the substantial compliance standard for notification of non-constitutional protections under Crim.R. 11(C)(2)(a) and (b), a defendant normally must demonstrate prejudice in order to invalidate a plea on the basis that it was not knowingly, intelligently, and voluntarily made. The test for prejudice is whether the plea would have otherwise been made. *Haddad* at ¶ 8.

However, the Supreme Court of Ohio has held that if a trial court completely fails to comply with Crim.R. 11 with respect to a non-constitutional protection, the plea must be vacated. *Clark* at ¶ 32, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, paragraph two of the syllabus. "A complete failure to comply with the rule does not implicate an analysis of prejudice." *Sarkozy* at ¶ 22.

## 1. Lack of Explanation of Effect of Guilty Plea

{¶ 48} Regarding appellant's first argument, that the trial court erred by not explaining the effect of a guilty plea, appellant concedes the Supreme Court in *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶ 19, held that "a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt." In *Griggs*, the court further held that in such circumstances, "a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *Id.* at syllabus. Here, appellant did not argue he suffered prejudice and, therefore, pursuant to *Griggs*, we presume no prejudice. Therefore, we find the trial court did not err as appellant has argued by not explaining the effect of a guilty plea.

## 2. Lack of Explanation of Maximum Prison Sentence for Each Offense

{¶ 49} Regarding appellant's second argument, that the trial court erred by not explaining the maximum prison sentence appellant faced for each of the offenses to which he was pleading guilty, we begin by noting appellant specifically argues the trial court did not inform him of the "maximum prison sentence" he faced for each offense, rather than the "maximum penalty." In this assignment of error, appellant does not complain about other parts of the sentence such as financial penalties, and he does not complain that the trial court, or the prosecutor, incorrectly informed him of the maximum prison sentence for each offense. In support of his argument that the trial court erred by not informing him at the plea colloquy of the maximum prison sentence for each offense, appellant points us to *State v. Johnson*, 40 Ohio St.3d 130 (1988). In *Johnson*, the Supreme Court interpreted Crim.R. 11(C)(2)(a) and noted that the rule speaks in the singular. Therefore, "the term 'maximum penalty' which is required to be explained is also to be understood as referring to a single penalty. In the context of 'the plea' to 'the charge,' the reasonable interpretation of the text is that 'the maximum penalty' is for the single crime for which 'the plea' is offered." *Johnson* at 133. Appellant also points to a First District case, *State v. Wilson*, 55

Ohio App.2d 64, 65-66 (1st Dist.1978),[8] in support of his argument that the signed guilty plea forms have no significance in determining whether the trial court complied with Crim.R. 11(C)(2). Finally, appellant points to an Eighth District case, *State v. Conrad*, 8th Dist. No. 88934, 2007-Ohio-5717, ¶ 10,[9] in support of his argument that the prosecutor's recitation of the maximum sentence for each offense was immaterial.

{¶ 50} Notably, in his brief, appellant did not allege that either: (1) he was prejudiced by any error on the part of the trial court in explaining the maximum prison sentence, or (2) he would not have otherwise entered the guilty pleas. Therefore, appellant has not demonstrated prejudice in order to invalidate his pleas on these grounds.

{¶ 51} Notwithstanding, in considering the totality of the circumstances, we find the trial court did substantially comply with Crim.R. 11(C)(2)(a) in explaining the maximum penalties for each offense to appellant. At the plea hearing, the prosecutor presented to the court her understanding of the pleas appellant was going to enter, along with a summary of the maximum sentences which could be imposed for each offense. After the prosecutor's summary, the court addressed appellant. The court first inquired regarding the entry of guilty plea forms. In response to the court's questions, appellant informed the court that he signed the forms, he went over the forms with his attorney before he signed them, his attorney explained all the information on the forms to him, and he understood the forms he signed. The court then stated:

> THE COURT: The total maximum prison sentence for all of these offenses, if I wanted to, I could run them consecutive to each other for a total maximum possible sentence of 103 years in prison with Ohio Department of Rehabilitation and Corrections.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Each of these offenses contain a possible fine. There could be a fine for a Felony 1 of $20,000; for a Felony 2

---

[8] *Wilson* is a First District case which does not bind this court. Furthermore, the holding in *Wilson* is based on the first three paragraphs of *State v. Caudill*, 48 Ohio St.2d 342 (1976). However, as explained in *State v. Ballard*, 66 Ohio St.2d 473, 475-76 (1981), the Supreme Court has since considered documents signed by appellant in the record in determining whether the trial court complied with the requirements of Crim.R. 11(C)(2).

[9] Likewise, *Conrad* is an Eighth District case that does not bind this court. Furthermore, *Conrad* addresses postrelease control.

of $15,000; for a Felony 3 of $10,000; and for a Felony 5 of $2,500. If I wanted to run those all consecutive, you could be looking at a total fine of $205,000 for each offense.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I could run those consecutive and make you pay that -- or order that be paid.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, those are the maximum sentences that I could impose. That doesn't mean that's what I'm going to impose. I don't know what I'm going to impose. What I'm going to do is order a presentence investigation report. We will come back for sentencing in June and at that time I will determine what the appropriate sentence is based on the information in front of me.

Has that been explained to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anyone made any promises about what sentence you're going to get or anything like that?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. The felonies of the first degree and the second degree carry what we call a presumption in favor of prison. What that means is that all things being equal for -- because of the serious nature of those offenses, I should lean towards imposing a prison sentence. I don't have to. It's not required, but for those type of offenses I should lean toward a prison sentence.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: In the last case, the 1901 case, Count Three carries a 3-year firearm specification. What that means is that I have to -- for that specification I have to impose 3 years of prison time. I can't put you on probation for that offense.

> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: That firearm specification means you're not eligible for judicial release, you're not eligible for good time credit, you're not eligible for earned credit. It's mandatory time. You will serve all 3 years of that firearm specification.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: On the remaining offenses, technically you would be eligible for community control. If I placed you on community control, it could be for up to 5 years, and if you violated community control, the probation department would then ask me to send you to prison upon those violations of your supervision.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

(Apr. 27, 2017 Tr. at 17-20.)

{¶ 52} In each case, appellant filed an entry of guilty plea outlining the offenses to which he was pleading guilty, the possible maximum prison term for each offense, and the offenses for which there was a mandatory prison term or a presumption in favor of prison. The form also listed the possible fines depending on the level of offense. In signing the form, appellant attested he understood the maximum prison terms as outlined on the forms, the offenses marked as requiring mandatory prison terms, and the offenses marked as subject to a presumption in favor of a prison term.

{¶ 53} Considering that appellant did not assert any prejudice or that he would not have otherwise entered the pleas of guilty, and the totality of the circumstances, we find the trial court substantially complied with the requirements of Crim.R. 11(C)(2)(a) in informing appellant of the maximum prison sentence for each offense.

### 3. Incomplete Information Regarding Postrelease Control

{¶ 54} Finally, regarding appellant's third argument, appellant argues the trial court erred by only discussing the postrelease control sanction he faced for the first-degree felonies and did not discuss how postrelease control applied to the remaining offenses.

Furthermore, appellant argues the trial court did not discuss all the sanctions for violating postrelease control when it discussed the first-degree felonies.  In particular, appellant argues the trial court did not mention that if he committed a new offense while on postrelease control, he could be required to serve in prison the remaining time of postrelease control or one year, whichever is greater pursuant to R.C. 2929.141.

{¶ 55} As noted above, the trial court's obligation to advise a defendant of postrelease control is a non-constitutional advisement listed in Crim.R. 11(C)(2)(a) and therefore is subject to a substantial compliance standard.  Furthermore, when there is no substantial compliance, appellate courts must determine whether the trial court partially complied or failed to comply with the rule.   " 'If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect.' "  *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶ 19, quoting *Clark* at ¶ 32.

{¶ 56} Appellant concedes the trial court discussed postrelease control with him during the plea colloquy and he did sign plea forms which discussed postrelease control and all sanctions for violating postrelease control.  Therefore, in essence, appellant concedes the court partially complied with the obligation to advise him of postrelease control rather than failed to comply with the obligation.

{¶ 57} Notably, here again, appellant did not allege that either: (1) he was prejudiced by any error on the part of the trial court in explaining postrelease control, or (2) he would not have otherwise entered the guilty pleas.  Rather, appellant stated "this court may properly conclude that had Brown [sic] known that information, 'he may not have pled' guilty."  (Appellant's Supplemental Brief at 11.)  In support, appellant cited *State v. Smith*, 5th Dist. No. 13-CA-44, 2014-Ohio-2990, ¶ 12.

{¶ 58} In *Smith*, the Fifth District considered whether a trial court had failed to notify a defendant that the prison terms to which he was subject were mandatory.  The court concluded that while the trial court did inform the defendant that the offense carried mandatory prison time, the court did not inform him of the number of years that were mandatory.  The court further noted that the plea form signed by the defendant had noted that only 3 years of a potential 40-year sentence were mandatory, however "all fourteen [sic]" years were mandatory.  *Smith* at ¶ 11.   While there was no indication in *Smith* that the defendant had averred that he would not have entered his guilty plea had he been

properly informed of the mandatory years, the Fifth District concluded without explanation or discussion: "[b]ased upon the totality of the circumstances, at the time appellant pled no contest, he was unaware of the amount of mandatory prison time, and that he would be ineligible for judicial release or community control for the entire fourteen year term. Had appellant known, he may not have pled no contest to the four counts." *Id.* at ¶ 12. *Smith* does not bind nor does it persuade this court here. Without more than a mere reference to the *Smith* case and an assertion that appellant "may" not have pled guilty, on the facts of this case, we cannot conclude appellant has demonstrated a prejudicial effect in order to invalidate his plea on these grounds.

{¶ 59} Notwithstanding, in considering the totality of the circumstances, we find the trial court did substantially comply with Crim.R. 11(C)(2)(a) in explaining postrelease control to appellant. Contrary to appellant's argument that the trial court was required to discuss all the requirements of postrelease control and sanctions for violating the same in the plea colloquy, this court has " ' "applied a 'totality of the circumstances' test to determine whether or not the defendant was properly notified of post-release control." ' " *State v. Sullivan*, 10th Dist. No. 17AP-94, 2017-Ohio-2943, ¶ 9, quoting *State v. Cockroft*, 10th Dist. No. 13AP-532, 2014-Ohio-1644, ¶ 14, quoting *State v. Boone*, 10th Dist. No. 11AP-1054, 2012-Ohio-3653, ¶ 25, quoting *State v. Williams*, 10th Dist. No. 10AP-1135, 2011-Ohio-6231, ¶ 23. Using that approach, we have concluded that " 'the trial court sufficiently fulfilled its statutory obligations when, taken as a whole, its oral and written notifications, including those at the sentencing hearing, properly informed the defendant of post-release control.' " *Cockroft* at ¶ 14, quoting *State v. Wilcox*, 10th Dist. No. 13AP-402, 2013-Ohio-4347, ¶ 4.

{¶ 60} As noted above, at the plea hearing the prosecutor presented to the court her understanding of the pleas appellant was going to enter, along with a summary of the maximum sentences which could be imposed for each offense. The prosecutor also informed the court which of the offenses were subject to mandatory postrelease control and the amount of years that were mandatory. Following the prosecutor's summary, as noted above, the court addressed appellant and inquired regarding the entry of guilty plea forms. As relevant here, the court stated:

> THE COURT: The felonies of the first degree carry a mandatory -- they carry a mandatory period of 5 years post-release control upon your release from prison. What that

> means is that when you are released from prison, you will be monitored by the Adult Parole Authority for 5 years. They will set conditions and terms of supervision that you have to comply with, and if you don't, if you violate those terms of supervision, they can send you back to prison for up to half of your original sentence. So, for example, if you served 15 years, they could send you back for 7-and-a-half; if you served 25 years, they could send you back for 12-and-a-half.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

(Apr. 27, 2017 Tr. at 20-21.)

{¶ 61} The entry of guilty plea forms listed the possible terms of postrelease control and whether the terms were mandatory or optional. In case No. 16CR-1901, an "X" was placed next to F-1 "Five Years – Mandatory" and F-3 "Three Years - Mandatory." In case No. 16CR-886, an "X" was placed next to F-2 "Three years - Mandatory." In case No. 16CR-693, an "X" was placed next to F-2 "Three years Mandatory," "F-3 without Cause or Threat of Physical Harm Up to Three Years – Optional," and "F-5 Up to Three Years - Optional." In case No. 16CR-172, an "X" was placed next to "F-2 Three Years - Mandatory." By signing the forms, appellant indicated he understood that the periods of postrelease control were applicable. Each form further stated:

> I understand that a violation of post-release control conditions or the condition under R.C. 2967.131 could result in more restrictive non-prison sanctions, a longer period of supervision or control up to a specified maximum, and/or reimprisonment for up to nine months. The prison term(s) for all post-release control violations may not exceed one-half of the prison term originally imposed. *I understand that I may be prosecuted, convicted and sentenced to an additional prison term for a violation that is a felony. I also understand that such felony violation may result in a consecutive prison term of twelve months or the maximum period of unserved post-release control, whichever is greater.* Prison terms imposed for violations or new felonies do not reduce the remaining post-release control period(s) for the original offense(s).

(Emphasis added.)

{¶ 62} In addition, appellant filed with the court in all cases a notice of prison imposed form, which he and his attorney signed, informing appellant that upon his release from prison he will have a period of postrelease control for five years and setting forth the possible consequences of violating the postrelease control sanctions. Each form contained a note at the bottom of the page which indicated: "Note: [F-1 and felony sex offenders-mandatory 5 years; F-2 and F-3 with harm, mandatory 3 years; other F-3, F-4, F-5 not mandatory -- up to 3 years]." The form also stated:

> After you are released from prison, you (x will, may) have a period of post-release control for _5_ years following your release from prison. If you violate post-release control sanctions imposed upon you, any one or more of the following may result:
>
> (1) The Parole Board may impose a more restrictive post-release control sanction upon you; and
>
> (2) The Parole Board may increase the duration of the post-release control subject to a specified maximum; and
>
> (3) The more restrictive sanction that the Parole Board may impose may consist of a prison term, provided that the prison term cannot exceed nine months and the maximum cumulative prison term so imposed for all violations during the period of post-release control cannot exceed one-half of the stated prison term originally imposed upon you; and
>
> (4) If the violation of the sanction is a felony, you may be prosecuted for the felony and, in addition to any sentence it imposes on you for the new felony, the Court may impose a prison term, subject to a specified maximum, for the violation.

{¶ 63} Considering appellant did not assert any prejudice or that he would not have otherwise entered the pleas of guilty, and the totality of the circumstances, we find the trial court substantially complied with the requirements of Crim.R. 11(C)(2)(a) in informing appellant of the requirements and possible sanctions for violations of postrelease control.

{¶ 64} Accordingly, we overrule appellant's first and second assignments of error.

**IV. Conclusion**

{¶ 65} Based on the foregoing, we overrule appellant's first, second, and fourth assignments of error. We sustain the third assignment of error, however instruct the trial court upon remand in case No. 16CR-1901 to correct this error with a nunc pro tunc entry

to reflect what the trial court actually did as noted above.  We overrule appellant's fifth assignment of error as to case Nos. 17AP-488 and 17AP-490, we sustain appellant's fifth assignment of error as to case Nos. 17AP-487 and 17AP-491, and we instruct the trial court upon remand to hold a hearing in compliance with R.C. 2929.18(A)(1).  The judgment of the Franklin County Court of Common Pleas is hereby affirmed in part, reversed in part, and remanded to that court for further proceedings consistent with law and this decision.

*Judgments affirmed in part;*
*reversed in part;*
*and cause remanded with instructions.*

LUPER SCHUSTER and NELSON, JJ., concur.